**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** *ex rel*. | ) | |
| **DAVID NISSMAN, Individually,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 2011-0010** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SOUTHLAND GAMING OF THE VIRGIN** | ) | |
| **ISLANDS, INC., SOUTHLAND AMUSEMENT** | ) | |
| **AND VENDING, INC., ROBERT HUCKABEE,** | ) | |
| **III, AND JOHN DOES NOS. 1-10,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————————— | ) | |

**Attorneys:**
**David M. Nissman, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Bennett Chan, Esq.,**
St. Thomas, U.S.V.I.
**Jason C. Hicks, Esq.,**
**Mark N. Poovey, Esq.,**
Washington, D.C.
    *For Defendants*

**<u>MEMORANDUM OPINION</u>**

**Lewis, Chief Judge**

    THIS MATTER comes before the Court on Defendant Southland Gaming of the Virgin Islands, Inc.'s "Motion to Dismiss and Strike" (Dkt. No. 28); Defendants Southland Amusement and Vending, Inc. and Robert Huckabee, III's "Motion to Dismiss and Strike" (Dkt. No. 30); Defendants' "Motion to Strike Plaintiff's Declaration" (Dkt. No. 40); Defendants' "Joint Motion for Hearing" (Dkt. No. 43); and the parties' respective Oppositions and Replies (Dkt. Nos. 37, 42, 44, 45). For the reasons that follow, the Court will grant in part and deny in part Defendants'

Motions to Dismiss and Strike; deny Defendants' Motion to Strike Plaintiff's Declaration; and deny Defendants' Joint Motion for Hearing. Based on these rulings, this case will be dismissed.

## I.   BACKGROUND

### A. Procedural History

Plaintiff David Nissman ("Plaintiff"), proceeding as a *qui tam* relator,[1] brings this action against Defendants Southland Gaming of the Virgin Islands, Inc. ("Southland Gaming"), Southland Amusement and Vending, Inc. ("Southland Amusement"), Robert Huckabee, III ("Huckabee"), and John Does Nos. 1-10 (collectively "Defendants"), alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729. (Dkt. No. 1 at 41-45).[2] On behalf of himself and the United States Government, Plaintiff seeks to recover civil penalties for each alleged violation of the FCA, as well as treble damages, punitive damages, attorney's fees and costs, and pre-judgment interest. (Dkt. No. 1 at 45).

As required by the FCA, the Complaint was filed under seal to allow the United States time to investigate the claims asserted by Plaintiff and to determine whether to intervene. *See* 31 U.S.C. § 3730(b)(2).[3] The United States sought and received several extensions of time to consider

---

[1] The term "*qui tam*" is an abbreviation of the Latin phrase "'*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 509 n.1 (3d Cir. 2007) (quoting *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769 n.1 (2000)). A *qui tam* action permits a private individual, known as a relator, to file suit on behalf of him or herself and the United States Government for violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*. *See United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 231 n.1 (3d Cir. 2013); *see also* 31 U.S.C. § 3730(b)(1). If successful, the relator may recover between 25 and 30 percent of the damages awarded to the United States, as well as reasonable expenses, attorney's fees, and costs. 31 U.S.C. § 3730(d)(2).

[2] On May 20, 2009, the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617 (2009), amended and renumbered several provisions of the FCA. The Court will discuss the effect of the FERA amendments below.

[3] Section 3730(b)(2) of the FCA provides that:

> A copy of the complaint and written disclosure of substantially all material evidence and information the [relator] possesses shall be served on the Government pursuant to Rule 4(d)(4) [now Rule 4(i)] of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under

intervention. *See* 31 U.S.C. § 3730(b)(3).[4] Ultimately, the United States filed a "Notice of Election to Decline Intervention," in which it advised the Court that it had decided not to intervene in this action and requested, *inter alia*, that the Court unseal the Complaint. (Dkt. No. 12). The Complaint was then unsealed and served on Defendants, who subsequently filed the instant Motions to Dismiss and Strike. (Dkt. Nos. 28, 30).[5]

Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(3), and 12(b)(6), for failure to plead fraud with particularity, lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, respectively. (*See id*.). Defendants also move to strike Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(f), on the grounds that the allegations contained in the Complaint are irrelevant, immaterial, scandalous, unsubstantiated, and false. (*See id*. at 4, 3). In response, Plaintiff has filed an Opposition, (Dkt. No. 37), along with a self-executed Declaration (Dkt. No. 37-1). Defendants have jointly moved to strike the Declaration pursuant to Local Rule of Civil Procedure 7.1(d) and Federal Rule of Civil Procedure 12(f). (Dkt. No. 40). The Court will grant Defendants' Motions to Dismiss on subject matter jurisdictional grounds, and deny Defendants' Motions to Strike. Because of the dismissal for lack of subject matter jurisdiction, the Court will not reach Defendants' remaining grounds for relief on the merits.

---

seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C. § 3730(b)(2).

[4] Under section 3730(b)(3) of the FCA, "[t]he Government may, for good cause shown, move the court for extensions of time during which the complaint remains under seal[.]" 31 U.S.C. § 3730(b)(3).

[5] Although Defendant Southland Gaming and Defendants Southland Amusement and Huckabee filed separate Motions to Dismiss and Strike, each Motion adopts and incorporates the arguments contained in the other Motion. (*See* Dkt. No. 28 at 4 n.1, Dkt. No. 31 at 2). Therefore, the Court will consider both Motions together.

## B.  Factual Background[6]

Acting pursuant to legislation passed in late 2002, which authorized video lottery gaming in the Virgin Islands, the Virgin Islands Lottery, an agency of the Virgin Islands Government, entered into a contract with Southland Gaming that, according to Southland Gaming, designated it "as the exclusive contractor for the placement and operation of video lottery terminals and *other gaming devices (i.e., slot machines)* within various retail establishments, resorts, and entertainment centers throughout St. Thomas and St. John." (Compl. ¶ 21) (quoting the Southland Gaming website) (internal quotation marks omitted) (emphasis in original).[7] The Virgin Islands Lottery and Southland Gaming also entered into a Master License Agreement, under which the amounts paid to Southland Gaming for its operation of the video lottery system are classified as "commissions." (Compl. ¶ 27).[8]

In the Complaint, Plaintiff alleges that beginning on or about February 1, 2008 and continuing thereafter, Defendants engaged in two fraudulent schemes to defraud the Virgin Islands Government. First, Plaintiff alleges that Defendants "entered into alleged 'negotiations' with certain [Virgin Islands] Government officials to procure a contract that purport[s] to give [them] as much as 50% of the proceeds of the video lottery gambling operation to the detriment of the [Virgin Islands] Government." (Compl. ¶ 28). As a result of this alleged "scheme and artifice," Plaintiff contends that "the Virgin Islands Government . . . did not receive the contractual value to

---

[6] The following factual allegations are as stated in the Complaint. As will be discussed herein, Defendants have made a facial challenge to the Court's subject matter jurisdiction. *See infra* at 9-10. Therefore, the Court "must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the [plaintiff]." *Constitution Party v. Aichele*, 757 F.3d 347, 356 n.12 (3d Cir. 2014) (quoting *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (internal quotation marks omitted)).

[7] The contract, which went into effect on July 29, 2003, is automatically renewable every five years. (Compl. ¶ 181).

[8] The Master License Agreement went into effect on December 15, 2003. (Compl. ¶ 27).

which it was entitled by law," and that Defendants have purportedly retained millions of dollars that belong to the Virgin Islands Government. (Compl. ¶¶ 29, 227-228).

Second, Plaintiff alleges that Defendants have fraudulently misrepresented to the Virgin Islands Government that they are operating a video lottery system, when in fact they are "operating slot machines and running the functional equivalent of casinos on St. Thomas and St. John, which are prohibited by Virgin Islands law." (Compl. ¶ 30).[9] To support this allegation, Plaintiff states that he visited the Parrott Club on St. John, a video lottery gaming center allegedly owned by Defendants, as well as other video lottery gaming centers on St. Thomas and St. John, where he "used negative and positive skill to affect the outcome of games." (Compl ¶ 40, 41). According to Plaintiff, "there should be no element of skill that can affect the outcome" of a lottery game. (Compl. ¶ 50).

Plaintiff has asserted two causes of action against Defendants—both under the FCA, 31 U.S.C. § 3729. (*See* Dkt. No. 1 at 41-46).[10]

## II.    GENERAL LEGAL PRINCIPLES

### A.  The Virgin Islands Lottery

The Virgin Islands Lottery ("Lottery"), the "official lottery of the Virgin Islands," is a statutorily created, "instrumentality of the Government of the Virgin Islands . . . managed by a

---

[9] Plaintiff states that slot machines are regulated by the Virgin Islands Casino Act and limited in the Virgin Islands to licensed casinos on St. Croix; whereas, the video lottery is regulated by the Virgin Islands Lottery Act and limited to St. Thomas and St. John. (Compl. ¶ 35).

[10] In his Opposition to the instant Motions to Dismiss, Plaintiff claims that the Complaint alleges three grounds for liability under the FCA: (1) that Defendants defrauded the Government of the Virgin Islands by operating illegal casino games; (2) that Defendants violated the Federal Lottery Law and illegally withheld from the Government of the Virgin Islands  tens of millions of dollars; and (3) that Defendants' gaming activities violated numerous other federal statutes which entitles the United States to impose significant fines and forfeitures against Defendants. (*See* Dkt. No. 37 at 6). The Court notes that Defendants' alleged violation of numerous federal statutes is not pleaded as a separate cause of action, but rather as support to establish Defendants' liability under the reverse false claims provision of the FCA. (*See* Dkt. No. 1 at 17-34; *see also* Dkt. No. 37 at 7 ("[T]he Complaint alleges that the defendants violated numerous federal laws that subject them to significant fines and forfeitures directly to the federal government, a reverse false claims under the FCA.")).

Director, subject to the supervision of the Virgin Islands Lottery Commission." 32 V.I.C. § 243. The Director is appointed by the Governor and "serve[s] at the pleasure of the Governor." 32 V.I.C. 245(a). The Virgin Islands Lottery Commission (the "Commission") is a seven-member body, comprised of the Commissioner of Finance, the Director of the Office of Management and Budget (or his designee), and five members appointed by the Governor to a four-year term. 32 V.I.C. § 244.

One of the primary powers and duties of the Commission is to promulgate rules and regulations governing the establishment and operation of the Lottery. 32 V.I.C. § 246(a). Such rules and regulations consist of the types of lottery to be conducted, including "video lottery gaming machines or devices, or any similar type of gaming device," the official lottery, instant lottery, and any additional lotteries established by the Commission. 32 V.I.C. § 246(a)(1)(i)-(iii); *see also* 32 V.I.C. § 246a (authorizing the Commission to establish and operate additional lotteries). The Commission is also responsible for the approval of any contracts the Director enters into "for the operation of the Lottery, or any part thereof." 32 V.I.C. § 247(h).

Another power and duty of the Commission is the distribution of all revenue generated by the Lottery. *See* 32 V.I.C. § 246(a)(11). By statute, the Commission allocates at least twenty percent (20%) of the net income to the General Fund of the Treasury of the Virgin Islands, *see id*. at § 246(a)(11)(i), which, in turn, is distributed among various Virgin Islands Government entities, funds, and programs, *see id*. The Commission also distributes a portion of the proceeds derived specifically from "games under each contract between the Virgin Islands Lottery and a private contractor of lottery games, including the proceeds under a contract with a contractor of video lottery games," to certain Virgin Islands Government entities, funds, and programs. *See id*. at § 246(a)(11)(iv). A small percentage of proceeds derived exclusively from the video lottery is also

distributed to various Virgin Islands programs and departments located on St. Thomas and St. John. *See id*. at § 246(a)(11)(iv)-(v). The remaining revenue is used to pay prizes to winning ticket holders, cover costs incurred in the operation and administration of the Lottery, and maintain a reserve fund. *See id*. at § 246(a)(11)(ii), (iii), (vi).

### B.  Reverse False Claims

Section 3729(a)(1)(G) of the False Claims Act ("FCA") imposes liability on any person who, *inter alia*, "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G) (effective May 20, 2009). This provision of the FCA, known as the "reverse false claims" provision, imposes liability for "an alleged fraudulent effort to reduce a liability owed to the government rather than to get a false or fraudulent claim allowed or paid." *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 n.12 (3d Cir. 2007).[11]

On May 20, 2009, Congress passed the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617 (2009), which amended and renumbered several provisions of the FCA, including the reverse false claims provision. Under the prior version of the reverse false claims provision, then codified at 31 U.S.C. § 3729(a)(7), the FCA stated that a person violates the FCA who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7). This version of the reverse false claims provision required

---

[11] Section 3729(a)(1)(A) of the FCA, which deals with payments by the Government, imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

a relator to prove that "the defendant made or used (or caused someone else to make or use) a false record [or statement] in order to avoid or decrease an obligation to the federal government." *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 (3d Cir. 2004) (citing *Kennard v. Comstock Res., Inc.*, 363 F.3d 1039, 1048 (10th Cir. 2004)).

Under the current version of the reverse false claims provision, codified at 31 U.S.C. § 3729(a)(1)(G), the requirement that a person *must make or use a false record or statement* to conceal, avoid, or decrease an obligation to pay the United States Government is no longer the sole basis upon which a claim can be premised. In its current form, which went into effect on May 20, 2009, a relator can either prove that the defendant made or used a false record or statement that was "material to" an obligation to pay the United States Government *or* that the defendant "knowingly conceal[ed] or knowingly and improperly avoid[ed] or decrease[d] an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). The alternative ground for liability now allows a relator to state a reverse false claim without alleging that the defendant used a false record or statement.

The Complaint in the instant case quotes the current version of the reverse false claims provision, 31 U.S.C. § 3729(a)(1)(G), *see* Compl. ¶¶ 8, 210, but cites to the prior version, 31 U.S.C. § 3729(a)(7), *see* Compl. ¶¶ 16, 29. Because the 2009 FERA amendments to the FCA are not retroactive, the current version of the reverse false claims provision applies to conduct alleged in the Complaint that occurred after May 20, 2009, and the prior version to conduct alleged in the Complaint that occurred before May 20, 2009. *See* FERA § 4, Pub. L. No. 111-21, 123 Stat. 1617, 1625 (2009); s*ee also Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946 (1997) (stating that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place . . . .") (citing *Landgraf v. USI Film Products*, 511 U.S. 244,

265 (1994)). For subject matter jurisdictional purposes, however, the analysis and result are the same.[12]

### III.   DEFENDANTS' MOTIONS TO DISMISS

Defendants' Motions to Dismiss are premised on the argument that the Court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. No. 28 at 1-2; Dkt. No. 30 at 2). Defendants also argue, in the alternative, that Plaintiff has failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and that Plaintiff has failed to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b). (Dkt. No. 28 at 1-4; Dkt. No. 30 at 2). As will be discussed herein, the Court finds that it lacks subject matter jurisdiction over Plaintiff's FCA claims, and will therefore grant Defendants' Motions to Dismiss under Rule 12(b)(1).

### A.   Subject Matter Jurisdiction

#### 1.   Applicable Legal Principles

Under Federal Rule of Civil Procedure 12(b)(1), a motion to dismiss "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 287-88 (3d Cir. 2008) (citing *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). A facial challenge "concerns 'an alleged pleading deficiency' whereas a factual [challenge] concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (quoting *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (alterations in original)).

---

[12] In the Complaint, Plaintiff quotes other provisions of the FCA. (*See* Dkt. No. 1 at 42, 44). However, the allegations in the Complaint appear to focus only on the reverse false claims provision. To the extent that Plaintiff has pleaded allegations that support other provisions of the FCA, the Court finds that those allegations do not alter the Court's ruling herein.

"In reviewing a facial challenge . . . 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Gould Elecs., Inc.*, 220 F.3d at 17). A review of factual challenges, however, allows the court to "weigh and consider evidence outside the pleadings." *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (quoting *Gould Elecs., Inc.*, 220 F.3d at 176) (internal quotation marks omitted)).

In the instant case, Defendants have made a facial challenge to the Court's subject matter jurisdiction, asserting that Plaintiff has failed to plead sufficient facts to establish jurisdiction under the FCA. (*See* Dkt. No. 29 at 5; Dkt. No. 31 at 4-5); *see also Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014) (stating that a facial challenge "contest[s] the sufficiency of the pleadings"). Accordingly, the Court must "review only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the [] court." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (citations omitted)); *see also Culver v. United States Dep't of Labor OSHA*, 248 F. App'x 403, 406 (3d Cir. 2007) ("Facial challenges to subject matter jurisdiction 'contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true.'") (quoting *Taliaferro*, 458 F.3d at 188).

## 2.  Merits

Defendants move to dismiss the instant action on the basis, *inter alia*, that the FCA applies only to false claims made against the United States and not to an agency of the Virgin Islands Government, such as the Virgin Islands Lottery, that does not receive federal funding. (Dkt. No. 29 at 5-11; Dkt. No. 31 at 4-5). In support of this argument, Defendants rely heavily on the definition of the term "claim" found in section 3729(b)(2)(A) of the FCA. According to

Defendants, the Virgin Islands Lottery must be deemed either an agent of the United States, *see* 31 U.S.C. § 3729(b)(2)(A)(i), or a recipient of federal funds, *see* 31 U.S.C. § 3729(b)(2)(A)(ii), in order for the FCA to apply. (Dkt. No. 29 at 8; Dkt. No. 31 at 4-5). Defendants maintain that neither is the case here.

In opposition, Plaintiff concedes that the FCA governs claims against the United States Government, but argues that the Virgin Islands, an unincorporated territory of the United States, is not an independent sovereign, such as a state, but rather "a mere instrumentality of the United States." (Dkt. No. 37 at 9, n.4). This argument is premised on the fact that Congress has plenary power pursuant to the Territory Clause of the United States Constitution to regulate the unincorporated territories of the United States, including the Virgin Islands. (*See id*. at 12); *see also* U.S. CONST. art. IV, § 3, cl. 2 ("The Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States . . . ."). According to Plaintiff, a fraud against the Virgin Islands is a fraud against the United States. (Dkt. No. 37 at 17).[13]

In the alternative, Plaintiff asserts that this Court has subject matter jurisdiction by virtue of Defendants' violation of numerous federal statutes. (*See* Dkt. No. 37 at 18-21). Plaintiff contends that these federal statutes, which impose fines and forfeitures, subject Defendants to liability under the reverse false claims provision of the FCA, 31 U.S.C. § 3729(a)(1)(G). (*See id*. at 18). Specifically, Plaintiff contends that Defendants are knowingly and improperly avoiding an "obligation" to pay money to the United States Government. (*See id*. at 20).

---

[13] In support of this argument, Plaintiff relies on a number of cases. (*See* Dkt. No. 37 at 9-13; 15-16). However, Plaintiff's reliance on these cases is misplaced because they do not address the subject matter jurisdictional issue here. Rather, they stand, in part, for the unassailable proposition that the territories of the United States are subject to the ultimate control of Congress. (*See* Dkt. No. 42 at 5 n.3).

### a.  Sovereignty of the Virgin Islands

The threshold issue before the Court is whether the relationship between the Virgin Islands and the United States renders a fraud against an agency of the Virgin Islands Government a fraud against the United States for purposes of the FCA. Defendants argue that "binding precedent from this Court and the Third Circuit [] recognize that the Virgin Islands Government is separate and distinct from the United States Government[.]" (Dkt. No. 29 at 5; Dkt. No. 31 at 4). Plaintiff, on the other hand, argues that "a diligent analysis of the statutory language of the FCA and of the special relationship between the United States and the Virgin Islands" supports the "simple fact" that "an unincorporated territory is not a separate sovereign from the United States, but is instead a mere instrumentality of the United States." (Dkt. No. 37 at 9). Upon consideration of the arguments advanced by the parties and the relevant legal authority, the Court concludes that the Virgin Islands and its agencies are not instrumentalities of the United States Government for purposes of the civil provisions of the FCA.

In their Motions to Dismiss, Defendants cite to *United States v. Gumbs*, 283 F.3d 128, 44 V.I. 376 (3d Cir. 2002), for the proposition that "the Government of the Virgin Islands is not a 'person or officer' or 'department or agency' of the United States, within the meaning of the FCA." (Dkt. No. 29 at 10; Dkt. No. 31 at 5). In response, Plaintiff argues that Defendants' reliance on *Gumbs* is "misplaced" because the salient issue—whether the Virgin Islands is an agency of the United States—was never litigated by the parties or addressed by the court. (Dkt. No. 37 at 17 n.5 ("It is obvious from the court's opinion that the court merely assumed that a claim against the Virgin Islands was not a claim against a 'department or agency' of the United States[.]")). Plaintiff argues further that the defendant in *Gumbs* was charged with violating the criminal provisions of

the FCA, which (unlike the civil provisions of the FCA) contain the definition of a "department" and an "agency" of the United States. (*See id*.).

In *United States v. Gumbs*, the defendant contractor, Lincoln Gumbs, was convicted of causing the Government of the Virgin Islands to make or present a false claim to a federal department (the United States Department of the Interior) in violation of 18 U.S.C. § 2(b) and § 287—the criminal provisions of the FCA. *See* 283 F.3d at 130.[14] On appeal, Gumbs argued that before a defendant can be convicted under 18 U.S.C. § 2(b) and § 287, the government must prove that the defendant knew that he was presenting the claim to the federal government. *See id*. at 130-31. Gumbs submitted that "there was insufficient evidence that he knew that the contracts in question were federally funded." *Id*. at 130.

The Third Circuit, in reversing and remanding the case to the trial court, concluded that there was "insufficient evidence from which a rational jury could find beyond a reasonable doubt that Gumbs knew that he was causing the [Government of the Virgin Islands] to make or present a false claim [to the Department of the Interior]." *Id*. at 131. In reaching this conclusion, the Third Circuit stated that there was "no evidence that Gumbs knew that his contract was funded by anyone other than the [Government of the Virgin Islands]" and that it was "undisputed that Gumbs presented his claims for payment to the [Government of the Virgin Islands], which is neither a 'person or officer in the civil, military, or naval service of the United States,' nor a 'department or agency' of the United States, as defined in 18 U.S.C. [§] 6 . . . . " *Id*. at 131-32.[15]

---

[14] Under Section 2(b), it is a crime for a person to "willfully cause[] an act to be done which if directly performed by him or another would be an offense against the United States." 18 U.S.C. § 2(b). Section 287 prohibits any person from "mak[ing] or present[ing] . . . any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent." 18 U.S.C. § 287.

[15] Section 6 of Title 18 of the United States Code defines "department" as "one of the executive departments enumerated in [section 101] of Title 5 [(i.e., The Department of State, The Department of the Treasury, The Department of Defense, etc.)], unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government," and defines "agency" as "any department, independent

Although *Gumbs* involved a violation of the criminal provisions of the FCA, it is nevertheless instructive that the Third Circuit, in holding that Gumbs did not possess the requisite *mens rea* for the offense charged, stated that the Virgin Islands is neither a department nor an agency of the United States. Because the criminal provisions of the FCA were originally codified with the civil provisions under the 1863 Act, *see* Act of Mar. 2, 1863, ch. 67, § 3, 12 Stat. 698, until it was bifurcated in 1878 and re-codified at 18 U.S.C. § 2 and § 287, *see Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 128 n.8 (2003), it is reasonable to conclude that the criminal and civil provisions of the FCA should be similarly interpreted. *See United States v. McBride*, 362 F.3d 360, 371 (6th Cir. 2004) (utilizing § 3729(c) of the civil provisions of the FCA to define the term "claim" in § 287—one of the criminal provisions of the FCA); *see also United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 444 (6th Cir. 2005) (citing *McBride*, 362 F.3d at 371).[16] Accordingly, if the Virgin Islands is not a department or an agency of the United States under the criminal provisions of the FCA, the same conclusion should obtain under the civil provisions.

In any event, the conclusion that the Virgin Islands is not an agency or instrumentality of the United States for purposes of the civil provisions of the FCA is independently supported by an examination of the relationship between the Virgin Islands and the United States. In *Jackson v. W. Indian Co.*, this Court explained, in the context of "analyzing the applicability of antitrust laws" to the Virgin Islands that, "because the Virgin Islands enjoys many of the 'trappings of a sovereign

---

establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest . . . ." 18 U.S.C. § 6.

[16] In arguing that Defendants' reliance on *Gumbs* is "misplaced," Plaintiff notes that the criminal provisions of the FCA—unlike the civil provisions—contain the definition of a "department" and an "agency" of the United States. However, Plaintiff fails to identify any material difference between the term "person or officer . . . [and] department or agency" of the United States in the criminal provision of the FCA, 18 U.S.C. § 287, and the term "officer, employee or agent of the United States" in the civil provision of the FCA, 31 U.S.C. § 3729(b)(2)(A)(i).

governmental entity,' even if that sovereignty is the creation of Congress, the Virgin Islands should be treated in the same way as a state[.]" 944 F. Supp. 423, 428 (D.V.I. Oct. 16, 1996) (quoting *Ngiraingas v. Sanchez*, 858 F.2d 1368, 1371 (9th Cir. 1988)). In analyzing the issue, the Court relied largely on the reasoning of the Third Circuit in *Harris v. Boreham*, 233 F.2d 110 (3d Cir. 1956), which held that the Virgin Islands is not a federal agency within the meaning of the Federal Tort Claims Act. *See id*. at 114, 116.[17]

> In *Harris v. Boreham*, the Third Circuit explained:

> It is settled that Congress has sovereignty over the territories of the United States and accordingly has power to legislate for a territory with respect to all subjects upon which the legislature of a state might legislate within the state. It is also settled that Congress may delegate to a territory such of these powers as it sees fit. And the right of Congress to revise, alter and revoke these delegated powers does not diminish the powers while they reside in the territory. The aim of Congress is to give the territory full power of local self-determination.

*Id*. at 113 (internal citations omitted). The Court went further to state:

> These principles apply to the unincorporated territories, such as the Virgin Islands. For it has been held that Congress may create a territorial government for an unincorporated territory and may confer upon it an autonomy similar to that of the states. And the territorial body politic thus created may be endowed with attributes of sovereignty, such as nonliability to suit without its consent.

*Id*. at 114 (internal citations omitted).

Based on this understanding of the intent of Congress in creating the governments of the unincorporated territories, the Court concluded that "the unincorporated territory of the Virgin

---

[17] In *Harris v. Boreham*, the plaintiff "while walking along Trumpeter Gade in the town of Charlotte Amalie, on the island of St. Thomas . . . was injured as a result of tripping over a loose steel plate designed to cover a street opening[.]" 233 F.2d at 112. Following the dismissal of her suit against the Municipality of St. Thomas and St. John, the plaintiff brought suit against the United States under the Federal Tort Claims Act on the theory that, *inter alia*, "the public streets of the town of Charlotte Amalie, in the Municipality of St. Thomas and St. John, are the property of the United States . . . [and] that Boreham[, the Superintendent of Public Works,] was an employee of the United States engaged in the business of the United States in maintaining those streets and as such was guilty of negligence imputable to the United States in failing to maintain Trumpeter Gade in a safe condition for the use of pedestrians." *Id*. at 112-13. The Federal Tort Claims Act imposes liability upon the United States for "'the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Id*. at 113 (quoting 28 U.S.C. § 1346(b)).

Islands [is] a body politic quite distinct from the Government of the United States and that [the Virgin Islands has] attributes of sovereignty which [have] been delegated to it by the Government of the United States but which [are] distinct from the powers of [the United States Government]." *Id*. at 114. The Court noted that "this distinction . . . is indicated not only by the Organic Act [of 1936] itself but by later enactments." *Id*. at 115.

Using the 1900 Foraker Act of Puerto Rico as an example, the Court reasoned that Congress by the Organic Act of 1936 conferred upon the Virgin Islands "attributes of sovereignty," including a government that conforms "to the American system with defined and divided powers, -- legislative, executive and judicial." *Id*. at 114 (quoting *People of Porto Rico v. Rosaly y Castillo*, 227 U.S. 270, 276-77 (1913) (internal quotation marks omitted)). The Court also stated that the Organic Act of 1936

> constituted each municipality [of the Virgin Islands] into a body politic and juridic with perpetual succession and with power to acquire property, to possess, administer, and govern such property and to alienate or encumber it. It provided for a municipal council in each municipality with local legislative powers for the Virgin Islands as a whole, a Governor to act as chief executive of the Virgin Islands as a whole and of each of the two municipalities, and a district court to exercise the judicial power of the Islands.

*Id*.; *see also Bluebeard's Castle, Inc. v. Government of the Virgin Islands*, 321 F.3d 394, 399 n.9 (3d Cir. 2003) ("The form of government in the Virgin Islands is defined by the Organic Act, originally passed by Congress in 1936[.]").

These "attributes of sovereignty" were then expanded by the Revised Organic Act of 1954, 48 U.S.C. §1541, *et seq*., which was intended by Congress "to give a greater degree of autonomy, economic as well as political, to the people of the Virgin Islands." *Water Isle Hotel & Beach Club, Ltd. v. Kon Tiki St. Thomas, Inc.*, 795 F.2d 325, 327 (3d Cir. 1986) (citing 1954 U.S. Code Cong.

& Admin. News 2585, 2616).[18] Since 1954, the Revised Organic Act has been further amended to extend even greater autonomy to the Virgin Islands. *See Jackson*, 944 F. Supp. at 429 (stating that "the Revised Organic Act, as amended, . . . established an elected governor and legislature, as well as a territorial judiciary independent of the District Court of the Virgin Islands").

In the judicial arena, "the Revised Organic Act of 1954 was amended [in 1984] to give the local legislature the authority to divest the District Court of all non-federal question, non-diversity jurisdiction." *Berne v. Boschulte*, 6 F. Supp. 2d 443, 444 (D.V.I. 1998). Initially, the District Court of the Virgin Islands was "more like a state court of general jurisdiction than a United States district court." *Privateer Bay Mgmt. Corp. v. Heirs of Sewer*, 102 F. App'x 228, 231 (3d Cir. 2004) (quoting *Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1057 (3d Cir. 1982) (internal quotation marks omitted)). This is because the District Court "had [original] jurisdiction over most local matter[s]." *Bluebeard's Castle*, 321 F.3d at 401 (citing *Brow v. Farrelly*, 994 F.2d 1027, 1034, 28 V.I. 345 (3d Cir. 1993)). In 1990, however, the Virgin Islands legislature, pursuant to the authority granted by the 1984 amendments to the Revised Organic Act, enacted a statute that divested the District Court of original jurisdiction over all local civil actions. *See Parrott v. Gov't of the Virgin Islands*, 230 F.3d 615, 619, 43 V.I. 277 (3d Cir. 2000). Consequently, the jurisdiction of the District Court became "equivalent, at least in the civil context, to that of a United States District Court." *Club Comanche, Inc. v. Gov't of the Virgin Islands*, 278 F.3d 250, 256 (3d Cir. 2002).[19]

---

[18] "On June 29, 2007, Congress repealed the 1936 Act and made the repeal retroactive to the enactment of the Revised Organic Act of 1954." *Berne Corp. v. Government of the Virgin Islands*, 570 F.3d 130, 135 (3d Cir. 2009) (citing Pub. L. No. 110-40, 121 Stat. 232 (2007)).

[19] In 1993, the Virgin Islands legislature vested original jurisdiction over all local criminal actions in the Territorial Court of the Virgin Islands—now known as the Superior Court of the Virgin Islands. *See* 4 V.I.C. § 76(b). However, the District Court retains "concurrent jurisdiction over any local crimes that are sufficiently similar to federal crimes." *Defoe v. Phillip*, 702 F.3d 735, 738 (3d Cir. 2012) (citing *Callwood v. Enos*, 230 F.3d 627, 631, 43 V.I. 293 (3d Cir. 2000)).

The authority granted to the Virgin Islands legislature by the 1984 amendments also permitted changes to be made to the appellate structure of the Virgin Islands judiciary. Until 2004, "the District Court served as more than a trial court. The Appellate Division of the District Court also heard appeals from local courts." *Defoe v. Phillip*, 702 F.3d 735, 738 (3d Cir. 2012) (citing 48 U.S.C. § 1613a(a)); *see also Virgin Islands v. Rivera*, 333 F.3d 143, 146 (3d Cir. 2003) (citing 48 U.S.C. § 1613a; 4 V.I. Code Ann. § 33) ("The Appellate Division function[ed] as an appellate tribunal for local matters until such time as the Virgin Islands legislature create[d] a local appellate court.").

As the Third Circuit has explained, "[t]he Virgin Islands court structure, incorporating the Appellate Division of the District Court as an appellate tribunal for local law, reflect[ed] Congress's intent to encourage 'the development of a local Virgin Islands appellate structure with greater autonomy with respect to issues of Virgin Islands law.'" *Id.* (quoting *In re Alison*, 837 F.2d 619, 622 (3d Cir. 1988)). Congress's intent in this regard was realized in 2004 with the establishment of the Supreme Court of the Virgin Islands, which assumed jurisdiction over all appeals from the Superior Court of the Virgin Islands, *see Defoe*, 702 F.3d at 739,[20] and in 2012 when the Supreme Court of the Virgin Islands became the "final authority on Virgin Islands law"—assuming the same role as the highest court of any state, *id.*[21]

---

[20] The Supreme Court of the Virgin Islands assumed its appellate jurisdiction on January 29, 2007. *See Defoe*, 702 F.3d at 739. All appeals from the Superior Court of the Virgin Islands are now heard before the Supreme Court, "except for those appeals that were already pending in the District Court." *Hodge v. Bluebeard's Castle, Inc.*, 392 F. App'x 965, 971 (3d Cir. 2010) (citing 48 U.S.C. § 1613a(d)). "The [A]ppellate [D]ivision of the District Court will cease existence when the last case pending is decided." *Kendall v. Russell*, 572 F.3d 126, 143 (3d Cir. 2009) (quoting *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 359 n.2 (internal quotation marks omitted)).

[21] Prior to 2012, the Third Circuit had certiorari jurisdiction under 48 U.S.C. § 1613 to review final decisions of the Virgin Islands Supreme Court. *See In re Kendall*, 712 F.3d 814, 822 n. 3 (3d Cir. V.I. 2013). On December 13, 2012, the House of Representatives and the Senate passed H.R. 6116, a bill that eliminated the Third Circuit's certiorari jurisdiction over final decisions of the Virgin Islands Supreme Court and replaced it with direct review by the Supreme Court of the United States. *See Kendall v. Daily News*, 716 F.3d 82, 86 (3d Cir. 2013).

18

To conclude that the Virgin Islands is a mere instrumentality of the United States, so as to bring it within the scope of the civil provision of the FCA on that basis would be contrary to the increased autonomy vested in the Virgin Islands and which it has enjoyed as a result of Congressional and local legislative action over the years. Thus, this Court finds, as has the Third Circuit, that "[w]hile not sovereign, in the true sense of that term, the Revised Organic Act has conferred upon [the Virgin Islands] attributes of autonomy similar to those of a sovereign government or a state." *In re Estate of Hooper*, 359 F.2d 569, 578 (3d Cir. 1966). Accordingly, "sensitivity to the division between federal and territorial power . . . seems appropriate, given Congress's choice to treat Virgin Islands law . . . with much of the independence of state law." *Bluebeard's Castle*, 321 F.3d at 401.[22] The Court therefore concludes that the Virgin Islands is

---

[22] In his Opposition to Defendants' Motions to Dismiss, Plaintiff quotes *United States v. Wheeler*, 435 U.S. 313 (1978), for the purpose of demonstrating the special relationship between the United States and the territories. In *Wheeler*, the Supreme Court stated:

> [A] territorial government is entirely the creation of Congress, "and its judicial tribunals exert all their powers by authority of the United States." When a territorial government enacts and enforces *criminal laws* to govern its inhabitants, it is not acting as an independent political community like a State, but as "an agency of the federal government."
>
> Thus, in a federal Territory and the Nation . . . "[t]here is but one system of government, or of laws operating within [its] limits." . . . Territory and Nation . . . are not two separate sovereigns to whom the citizen owes separate allegiance in any meaningful sense, but one alone.

*Id.* at 321 (emphasis added; internal citations omitted). The Court notes that *Wheeler* specifically referenced the enactment and enforcement of criminal laws. Further, it addressed dual sovereignty in the context of a criminal prosecution that involved the issue of double jeopardy. *See Wheeler*, 435 U.S. at 314. The constitutional rights of a defendant in a criminal case are quite different from the considerations at issue in a civil FCA suit. The Court finds that the issues present in the case at hand are more analogous to those set forth in *Harris v. Boreham*, 233 F.2d 110, 114 (3d Cir. 1956) (stating, in the context of the applicability of the Federal Tort Claims Act to the Virgin Islands, that "Congress may create a territorial government for an unincorporated territory and may confer upon it an autonomy similar to that of the states"); *Jackson v. W. Indian Co.*, 944 F. Supp. 423, 428-29 (D.V.I. Oct. 16, 1996) (concluding that "because the Virgin Islands enjoys many of the 'trappings of a sovereign governmental entity,' even if that sovereignty is a creation of Congress, the Virgin Islands should be treated in the same way as a state when analyzing the applicability of antitrust laws"); and, as discussed above, *United States v. Gumbs*, 283 F.3d 128, 132, 44 V.I. 376 (3d Cir. 2002) (stating, in the context of the criminal provisions of the FCA, that "the [Government of the Virgin Islands] . . . is neither a 'person or officer in the civil, military, or naval service of the United States,' nor a 'department or agency' of the United States . . . ."). Each of these cases involved the interpretation of a federal statute—as here—rather than an interpretation of the constitutional rights of criminal defendants, as in *Wheeler*.

neither an agency nor an instrumentality of the United States Government for purposes of the civil provisions of the FCA.

Plaintiff's additional argument does not alter the Court's conclusion. In his Opposition, Plaintiff cites 31 U.S.C. § 3732(b)[23] for the proposition that the FCA "expressly provides a means for states and local governments to join a federal False Claims Act case," but conspicuously leaves "the territories, which are mere instrumentalities of the government, without any similar recourse." (Dkt. No. 37 at 16-17).[24] Plaintiff concludes that the "[t]he only reasonable explanation [for this 'conspicuous absence'] is that Congress believed the territories are adequately protected because frauds against the territories are frauds against the sovereign." (*Id*. at 17).

As a preliminary matter, Plaintiff's quantum leap from the existence of 31 U.S.C. § 3732(b) to the conclusion that a fraud against an agency of the Virgin Islands Government is a fraud against the United States for purposes of the civil provisions of the FCA is devoid of any support whatsoever. He relies solely on what he construes as the "only reasonable explanation." (*Id*.).

However, Plaintiff's argument is weakened by the fact that "[s]ection 3732(b), like [28 U.S.C.] § 1367, confers only supplemental jurisdiction over state law claims; it does not 'federalize' those claims." *United States ex rel. Hansen v. Deming Hosp. Corp.*, 992 F. Supp. 2d 1137, 1166 (D.N.M. Nov. 21, 2013) (citing *In re Pharm. Indus. Average Wholesale Price*, 509 F. Supp. 2d 82, 94 (D. Mass. 2007); *Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 532 (7th Cir. 2008)). Consistent with the plain language of the statute, several courts have held that section 3732(b)

---

[23] Section 3732(b) of Title 31 of the United States Code, entitled "Claims under State law," provides that "[t]he district courts shall have jurisdiction over any action brought under the law of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730 [of the FCA]." 31 U.S.C. § 3732(b).

[24] Plaintiff also asserts that "Congress has likewise provided a specific federal qui tam remedy for false claims against Indian Tribes." (Dkt. No. 37 at 16 (citing *United States ex rel. Hall v. Tribal Dev. Corp.*, 49 F.3d 1208 (7th Cir. 1995)) and 25 U.S.C. §§ 81 and 201).

provides states with discretion to intervene in a federal FCA action to recover state or local funds under state law if the state and federal actions arise out of the same fraudulent scheme. *See, e.g.*, *Sanders v. Allison Engine Co.*, 703 F.3d 930, 939 (6th Cir. 2012) (stating that "§ 3732(b), entitled '*Claims* under state law,' specifically grants district courts jurisdiction over any action brought under state law for the recovery of state or local government funds if the action arises from the same transaction as an action under § 3730 of the FCA") (emphasis in original); *United States ex rel. Long v. SCS Business & Tech. Inst., Inc.*, 173 F.3d 870, 880 (D.C. Cir. 1999) (stating that "[t]he legislative history of § 3732(b) says that it was intended to allow 'State and local governments to join State law actions with False Claims Act actions brought in Federal district court if such actions grow out of the same transaction or occurrence'") (quoting S. Rep. No. 345, 99th Cong., 2d Sess., at 16 (1986), reprinted in 1986 U.S.C.C.A.N. at 5266, 5281)  (internal quotation marks omitted)). It does not "strip states of their ability to bring state law claims in state court." *Haw. ex rel. Louie v. Bristol-Myers Squibb Co.*, 2014 U.S. Dist. LEXIS 97323, at * 29 (D. Haw. July 15, 2014) (quoting *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 509 F. Supp. 2d at 93) (internal quotation marks omitted)).

Thus even assuming—without deciding—that territories are not included within the scope of § 3732(b), as Plaintiff claims, the Legislature of the Virgin Islands is not precluded from enacting local laws regarding false claims. Indeed, not only does the Legislature have the authority, but it has in fact used its authority by enacting a criminal statute that prohibits fraudulent claims against the Government of the Virgin Islands. *See* 14 V.I.C. § 843.[25] This statute, like comparable

---

[25] Section 843 of Title 14 of the Virgin Islands Code, entitled "Fraudulent claims upon the government," provides:

Whoever--

(1)   makes or presents any claim upon or against the government of the Virgin Islands or any officer, department, board, commission, or other agency thereof, knowing such claim to be false, fictitious or fraudulent;

state statutes, provides a legal remedy for economic loss suffered by the Government of the Virgin Islands as a result of a fraudulent claim. Therefore, the Virgin Islands is not left without recourse in the criminal context for fraudulent claims made against the Government of the Virgin Islands. *See e.g.*, *United States v. Andrews*, 681 F.3d 509, 531 (3d Cir. 2012) (affirming conviction under 14 V.I.C. § 843(4) for filing a fraudulent claim with the Government of the Virgin Islands); *United States v. Malone*, 282 F. App'x 964, 968 (3d Cir. 2008) (same). Nor does there appear to be anything that would prevent the Legislature from enacting a similar law in the civil context if it so desires. In short, the absence of any such local legislation or any federal law specifically providing supplemental jurisdiction in federal court for any "territorial" claim that arises out of the same transaction or occurrence as a federal claim does not convert the Virgin Islands Government into an agency or instrumentality of the federal government for purposes of the FCA.

Based on the foregoing, the Court concludes that the Virgin Islands and its agencies are not instrumentalities of the United States for purposes of the civil provisions of the FCA.[26] Accordingly, this Court lacks jurisdiction to entertain this action on that basis.

---

(2) knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(3) makes any false or fraudulent statements or representations; or

(4) makes or uses any false bill, receipt, voucher, roll, account, claim, certificate, affidavit or deposition knowing the same to contain any fraudulent or fictitious statement or entry--

in any matter within the jurisdiction of any officer, department, board, commission, or other agency of the government of the Virgin Islands, shall be fined not more than $500 or imprisoned not more than two years, or both.

14 V.I.C. § 843.

[26] The Court recognizes that Plaintiff relies, in part, on *Smith v. V.I. Port Authority*, 2005 U.S. Dist. LEXIS 56 (D.V.I. Jan. 2, 2005), for the proposition that the Government of the Virgin Islands is a mere instrumentality of the United States. (*See* Dkt. No. 37 at 12, 15-16; *see also Smith*, 2005 U.S. Dist. LEXIS 56, at *32 (stating, in the context of determining whether the Government of the Virgin Islands is exempt from the requirements of the ADA, that "as long as the federal government denies the Territory of the Virgin Islands incorporated status, the Government of the Virgin Islands will remain merely an instrumentality of the United States")). However, to the extent that Plaintiff relies on *Smith* to suggest that the same result should obtain here, the Court disagrees for the reasons stated above.

### b. Contractor, Grantee, or Other
### Recipient of Federal Funds

Having concluded that the Virgin Islands is not an agency or instrumentality of the United States for purposes of the civil provisions of the FCA, the Court must next determine whether the FCA otherwise applies to the claims in this case. Under section 3729(b)(2)(A) of the FCA, the term "claim" is defined as:

> any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that is presented to an officer, employee, or agent of the United States; or is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government provides or has provided any portion of the money or property requested or demanded; or will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded[.]

31 U.S.C. § 3729(b)(2)(A)(i)-(ii). Thus, for Plaintiff's claims to fall within the scope of the FCA, the Virgin Islands Lottery must be deemed "a contractor, grantee, or other recipient" of federal funds. *See, e.g.*, *United States ex rel. V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 299 F. Supp. 2d 483, 485 (D.V.I. 2004) ("The United States Department of Housing and Urban Development ["HUD"] provides federal funds to the [Virgin Islands Housing Authority], bringing the actions within the scope of the False Claims Act[,] 31 U.S.C. § 3729-3733.") (footnote omitted).

In the instant case, there is no allegation in the Complaint that the Virgin Islands Lottery is a contractor, grantee, or other recipient of federal funds. (*See* Dkt. No. 1 at 6 (stating that "the Virgin Islands Lottery runs and owns its own Lottery and is the owner of all monies collected")). At best, Plaintiff alleges that Defendants have retained millions of dollars that rightfully belong to the Virgin Islands Government. (*See id.* at 43, 45 (stating that "[b]ecause of the Defendants' fraudulent conduct, the Virgin Islands Government . . . did not receive the contractual value to

23

which it was entitled by law"). However, the fact that the Virgin Islands Government has allegedly been defrauded does not, without more, bring Plaintiff's claims within the scope of the FCA. *See United States ex rel. Watson v. Conn. Gen. Life Ins. Co.*, 87 F. App'x 257, 260 (3d Cir. 2004) (explaining that "the proper inquiry under the False Claims Act is whether the defendant made fraudulent claims that caused or would cause economic loss to the United States Treasury") (quoting *Hutchins v. Wilentz*, 253 F.3d 176, 185 (3d Cir. 2001) (internal quotation marks omitted)).

As noted earlier, the Virgin Islands Lottery funds all of its operations with the revenue generated from its lottery games, and uses the proceeds from the games to support various entities, funds, and programs in the Territory. *See* 32 V.I.C. § 246(a)(11). Accordingly, it is the Virgin Islands Government, and not the United States Government, that would suffer economically from Defendants' alleged fraud.

Because the Court has already concluded that the Virgin Islands is not an agency or instrumentality of the United States Government, nor is there any indication that the Virgin Islands Lottery is a contractor, grantee, or other recipient of federal funds, the Court will grant Defendants' Motions to Dismiss for lack of subject matter jurisdiction and dismiss Plaintiff's FCA claims pursuant to Rule 12(b)(1).

### c.   Reverse False Claims Provision

Plaintiff argues that this Court has subject matter jurisdiction over his claims under the reverse false claims provision of the FCA because Defendants have allegedly violated numerous federal statutes that subject Defendants "to significant fines and forfeitures by the United States Government." (Dkt. No. 37 at 20). By allegedly violating these statutes, Plaintiff contends that Defendants have avoided an "obligation" to pay money to the United States Government in violation of 31 U.S.C. § 3729(a)(1)(G). (*Id*. at 18, 20).

Defendants oppose this argument on two grounds. (*See* Dkt. No. 42 at 9-15). First, Defendants argue that "Plaintiff does not allege that Defendants submitted any false statements to the United States. Therefore, there is no basis for a 'reverse' false claim[.]" (*Id.* at 11 (distinguishing the instant case from the two cases cited by Plaintiff in his Opposition, *United States ex rel. Sequoia Orange Co. v. Oxnard Lemon Co.*, 1992 U.S. Dist. LEXIS 22575 (E.D. Cal. May 5, 1992) and *United States ex rel. Stevens v. McGinnins, Inc.*, 1994 U.S. Dist. LEXIS 20953 (S.D. Ohio Oct. 26, 1994), where the defendants submitted false statements to the United States to avoid fines and penalties)). Assuming that Defendants' contention incorporates the 2009 FERA amendments to the FCA, the Court agrees, for the reasons previously discussed, that the alleged submission of false statements to the Virgin Islands Government does not constitute submission of such statements to the United States under the FCA.

Second, Defendants argue that contingent or potential fines are not "obligations" for purposes of the FCA. (*See* Dkt. No. 42 at 11-12). In support of this argument, Defendants state that "no fines or penalties have been levied against Defendants;" "no charges have been brought against Defendants;" and "Defendants are entitled to defend themselves against charges that they violated federal law before there would be an 'obligation' to pay fines or penalties to the United States." (*Id.* at 10). Defendants also assert that "[c]ourts in the Third Circuit have held that an 'obligation' for purposes of the reverse false claim provision does not 'encompass[] a potential or contingent obligation, such as a fee that would be assessed upon the occurrence of a possible future event.'" (*Id.* at 12 (quoting *Zelenka v. NFI Industries, Inc.*, 436 F. Supp. 2d 701, 705 (D.N.J. 2006); (citing other cases)).

Before the 2009 FERA amendments, the FCA did not contain a definition of the term obligation. In its absence, several courts of appeal held that "unassessed civil and criminal

penalties for regulatory [and statutory] violations were 'contingent' obligations that could not form the basis of a reverse false claim." *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 2015 U.S. Dist. LEXIS 46929, at *41 n.10 (E.D. Pa. Apr. 10, 2015) (citing *American Textile Mfrs. Inst., Inc. v. Limited, Inc.*, 190 F.3d 729, 738 (6th Cir. 1999); *United States ex rel. Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 67 (D.C. Cir. 2008); *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 657 (5th Cir. 2004)). In 2009, as part of the FERA amendments, Congress added a definition of the term "obligation," specifying that an obligation means "an *established duty, whether or not fixed*, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3) (emphasis added).

The parties disagree over the meaning of this definition. Plaintiff contends that the relevant language in the definition is "whether or not fixed," which provides for "unfixed statutory and regulatory obligations," and that "by providing for unfixed statutory and regulatory obligations, Congress has abrogated the earlier decisions which held that contingent and potential statutory and regulatory fines are not obligations under the reverse false claim[s] provision[] of the FCA." (Dkt. No. 37 at 19 (citing *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997)). Defendants, on the other hand, argue that the relevant language in the definition is "established duty," and that "a contingent or potential fine is not an 'established duty.'" (Dkt. No. 42 at 13) (footnote omitted). Defendants also state that "the intent of the language 'whether or not fixed' was to cover 'fixed unliquidated obligations,' such as tariffs on imported goods." (*Id.* (quoting John T. Boese, Civil False Claims and Qui Tam Actions § 2.01[L], at 2-78).

The Court agrees that Plaintiff has failed to identify an "established duty" that would bring this matter within the scope of the FCA. The addition of the phrase "whether or not fixed" to the

reverse false claims provision was not meant to cover the type of contingent obligations Plaintiff contemplates—i.e., unadjudicated and unassessed statutory fines. *See United States ex rel. Boise v. Cephalon, Inc.*, 2015 U.S. Dist. LEXIS 94448, at *3 n.1 (E.D. Pa. July 21, 2015). "[The] phrase refers to 'whether or not the amount owed was fixed at the time of the violation' rather than whether an obligation to pay was fixed." *Id.* (quoting 1 John T. Boese, Civil False Claims and Qui Tam Actions § 2.01[L], 2-83 (2014)); *see also Kane ex rel. United States v. Healthfirst, Inc.*, 2015 U.S. Dist. LEXIS 101778, at *38 (S.D.N.Y. Aug. 3, 2015) (stating that "[the] legislative history indicates that Congress intended for FCA liability to attach in circumstances where . . . there is an established duty to pay money to the government, even if the precise amount due has yet to be determined").[27]

Although the definition of "obligation" under the amended version of the FCA includes "a relationship between the Government and a person that 'results in a duty to pay the Government money, whether or not the amount owed is yet fixed,'" S. Rep. No. 111-10, at 14 (2009) (citation omitted), *reprinted at* 2009 U.S.C.C.A.N. 430, 441, the type of contingent liability that is excluded from the scope of the reverse false claims provision has not changed. There remains no liability under the FCA for contingent obligations that "attach only after the exercise of administrative or prosecutorial discretion, and often after a selection from a range of penalties." *United States ex rel. Schaengold v. Mem'l Health, Inc.*, 2014 U.S. Dist. LEXIS 169555, at *39 (S.D. Ga. Dec. 8, 2014) (quoting *Am. Textile Mfrs.*, 190 F.3d at 738 (internal quotation marks omitted)).[28]

---

[27] In the Report of the Senate Judiciary Committee on the Fraud Enforcement and Recovery Act of 2009, the Committee explained that an "obligation" under the FCA "arises across the spectrum of possibilities from the fixed amount debt obligation where all particulars are defined to the instance where there is a relationship between the Government and a person that 'results in a duty to pay the Government money, whether or not the amount owed is yet fixed.'" *See* S. Rep. No. 111-10, at 14 (2009), *reprinted at* 2009 U.S.C.C.A.N. 430, 441.

[28] Prior to the passage of the FERA amendments, Senator John Kyl proposed an amendment to the suggested definition of the term "obligation," stating:

In the instant case, Plaintiff alleges that Defendants have violated numerous federal (and territorial) statutes, and that these statutes subject Defendants to "significant fines and forfeitures by the United States Government." (Dkt. No. 37 at 20). Plaintiff asserts that "[t]he fact that no such fines have been imposed is irrelevant[.]" (*Id.*). However,

> a defendant does not execute a reverse false claim by engaging in behavior that might or might not result in the creation of an obligation to pay or transmit money or property to the government. Contingent obligations—those that will arise only after the exercise of discretion by government actors—are not contemplated by the statute.

*Boise*, 2015 U.S. Dist. LEXIS 94448, at *10 (quoting *Am. Textile Mfrs.*, 190 F.3d at 738); *see also Zelenka*, 436 F. Supp. 2d at 706 (finding obligation to pay inspection fees was contingent upon government agency's decision to inspect shipments and that it was therefore not an obligation under the reverse false claims provision), *aff'd*, 260 F. App'x 493 (3d Cir. 2008).[29]

---

This is an amendment relating to section 4 of the bill, which amends the False Claims Act. My amendment replaces the bill's proposed definition of the word "obligation," which has important implications for the so-called "reverse" False Claims Act pursuant to which private parties may be held liable for failing to pay an obligation due to the United States. . . .

The bill's new definition of the word "obligation," in particular, posed several problems. The original language spoke of "contingent" obligations. Such contingent or potential duties could include duties to pay penalties or fines, which could arise—and at least become "contingent" obligations—as soon as the conduct that is the basis for the fine has occurred.

Obviously, we don't want the Government or anyone else suing under the False Claims Act to treble and enforce a fine before the duty to pay that fine has been formally established. It is unlikely that Justice would ever have brought suit to enforce a claim of this nature, but the FCA can also be enforced by private [relators] who often may be motivated by personal gain and not always exercise the same good judgment that the Government usually does.

155 Cong. Rec. S. 4539 (daily ed. Apr. 22, 2009) (statement of Sen. Kyl). Senator Kyl's amendment was accepted without objection. *See id.* His explanation of the amendment provides further support for the Court's conclusion.

[29] This conclusion is consistent with case law from other jurisdictions. *See, e.g.*, *United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 391 (5th Cir. 2008) (noting that "when potential fines depend on intervening discretionary governmental acts, they are not sufficient to create 'obligations to pay' under the False Claims Act"); *Hoyte v. Am. Red Cross*, 439 F. Supp. 2d 38, 44-45 (D.D.C. July 14, 2006) (finding no "obligation" within the meaning of the FCA where "no obligation w[ould] arise until the FDA decide[d] to exercise its authority"); *United States ex rel. Huangyan Import & Export Corp. v. Nature's Farm Prods., Inc.*, 370 F. Supp. 2d 993, 1000 (N.D. Cal. 2005) (stating that "potential obligations—fines, penalties and the like—that are contingent upon the exercise of some discretion or intervening act by the government are not properly the subject of a suit under the FCA").

Because the putative obligation in this case is contingent on governmental discretion, the Court finds that Plaintiff cannot establish subject matter jurisdiction based on any alleged violations of federal law. Accordingly, the Court rejects Plaintiff's argument that subject matter jurisdiction in this case exists under the reverse false claims provision of the FCA.[30]

## IV.   MOTIONS TO STRIKE

### 1.   Applicable Legal Principles

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f); *see also Collura v. City of Philadelphia*, 590 F. App'x 180, 185 (3d Cir. 2014). Immaterial matter has been defined as "that which has no essential or important relationship to the claim for relief." *Donnelly v. Commonwealth Fin. Sys.*, 2008 U.S. Dist. LEXIS 28604, at *10 (M.D. Pa. Mar. 20, 2008) (quoting *Delaware Health Care v. MCD Holding Co.*, 893 F. Supp. 1279, 1291-92 (D. Del. 1995) (internal quotation marks omitted)). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Scandalous matter "improperly casts a derogatory light on someone, most typically on a party to the action." *Id.* at *11 (quoting *Carone v. Whalen*, 121 F.R.D. 231, 233 (M.D. Pa. 1988) (internal quotation marks omitted)).

A court has "considerable discretion" in deciding a motion to strike under Rule 12(f). *Carter v. Newman*, 2015 U.S. Dist. LEXIS 23919, at *2 (D.N.J. Feb. 27, 2015). However, "such motions are 'not favored and usually will be denied unless the allegations have no possible relation

---

[30] In addition to moving to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Defendants also moved to dismiss this action pursuant to Rules 9(b), 12(b)(6) and 12(b)(3) for failure to plead fraud with particularity, failure to state a claim upon which relief can be granted, and improper venue, respectively. (*See* Dkt. No. 29 at 5-6; Dkt. No. 31 at 4-6). Defendants also argued that Plaintiff's claims are barred by the FCA's six-year statute of limitations. (*Id.*) In view of the Court's resolution of this matter on the threshold issue of subject matter jurisdiction, it need not reach the other grounds for dismissal.

to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Griswold v. Coventry First LLC*, 2015 U.S. Dist. LEXIS 19455, *20 (E.D. Pa. Feb. 18, 2015) (quoting *River Road Dev. Corp. v. Carlson Corp.*, 1990 U.S. Dist. LEXIS 6201, at *7 (E.D. Pa. May 23, 1990)); *see also Great West Life Assurance Co. v. Levithan*, 834 F. Supp. 858, 864 (E.D. Pa. 1993) ("Motions to strike are often not granted if there is an absence of a showing of prejudice to the moving party.").

"The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'" *Steak Umm Co., LLC v. Steak'Em Up, Inc.*, 2009 U.S. Dist. LEXIS 101357, at *4 (E.D. Pa. Oct. 29, 2009) (quoting *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004)); *see also The Knit With v. Knitting Fever, Inc.*, 2009 U.S. Dist. LEXIS 30230, *18 (E.D. Pa. Apr. 8, 2009) ("Striking a pleading is a 'drastic remedy' and should be used sparingly by courts, partly because of the difficulty of deciding cases without a factual record.") (citing *North Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158-59 (E.D. Pa. 1994)). "Allegations that are 'repugnant' or that contain 'superfluous descriptions and not substantive elements of the cause of action' . . . may be stricken." *Matos v. Nextran*, *Inc.*, 52 V.I. 676, 682 (D.V.I. 2009) (quoting *Alvarado-Morales v. Digital Equipment Corp.*, 843 F.2d 613, 618 (1st Cir. 1988)).

## 2. Motion to Strike the Complaint

Defendants move to strike the entire Complaint in this matter on the grounds that the allegations contained therein are "rumors[] and innuendo that are wholly irrelevant, immaterial, impertinent, salacious, unsupported, [and] demonstrably false[.]" (Dkt. No. 31 at 11; *see also* Dkt. No. 29 at 20 n.15). Specifically, Defendants argue that "the facts alleged in [the] Complaint do not state a claim under the False Claims Act"; accusations in the Complaint that "Defendants . . .

violat[ed] a number of federal statutes . . . are irrelevant to Plaintiff's claims under the FCA"; and paragraphs 175 to 208 of the Complaint "attempt[] to paint Defendants, their attorney and even their attorney's wife in a scandalous light." (Dkt. No. 31 at 11-13).

In response, Plaintiff asserts that the "allegations [in the Complaint] are neither 'baseless,' as asserted by Defendants, nor so unrelated to the claimed violations of the FCA that they are unworthy of consideration." (Dkt. No. 37 at 31). He further asserts that "the accusations of federal law violations . . . subject [Defendants] to significant federal fines and forfeitures. As such, the allegations, if proven at trial, establish numerous obligations [Defendants] avoided in their illegal gaming activities." (*Id*.). According to Plaintiff, "the allegations [in the Complaint] are also relevant to the issue of whether [] Defendants are operating a legal video lottery system in the Virgin Islands, as they are required to do . . . ." (*Id*.).

In "evaluating a motion to strike allegations of a complaint, the court must accept as true all factual allegations in the complaint and view all reasonable inferences in the light most favorable to [the plaintiff], just as on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6)." *Luppino v. Mercedes-Benz USA, LLC*, 2013 U.S. Dist. LEXIS 161689, at *8 (D.N.J. 2013) (citation omitted). Here, Defendants have not met the high burden of showing that the allegations contained in the Complaint—paragraphs 175 to 208, in particular—bear no relation to Plaintiff's claims under the FCA or that the allegations in the Complaint are prejudicial to any party to this action. *See Flanagan v. Wyndham Int'l, Inc.*, 2003 U.S. Dist. LEXIS 24211, at *3 (D.V.I. Apr. 21, 2003) ("To prevail on a motion to strike, the movant must show that the allegations being challenged are so unrelated to Plaintiff's claims as to be unworthy of any consideration and that their presence in the pleadings will be prejudicial."). Defendants offer only conclusory statements, unsupported by any legal analysis, that are insufficient to warrant the "drastic remedy" of striking

the Complaint. (*See, e.g.*, Dkt. No. 31 at 13 ("Plaintiff's scandalous suggestions and outrageous innuendo are false and misleading, wholly irrelevant, highly prejudicial, and should be stricken from the public record.")).[31] Accordingly, the Court will deny Defendants' Motions to Strike the Complaint.

### 3.   Motion to Strike Plaintiff's Declaration

In connection with his Opposition to Defendants' Motions to Dismiss, Plaintiff filed a "Declaration Concerning Challenge to Original Source Information." (Dkt. No. 37-1). In response, Defendants filed a "Motion to Strike Plaintiff's Declaration," pursuant to Local Rule of Civil Procedure 7.1(d)[32] and Federal Rule of Civil Procedure 12(f), wherein they make the following arguments:

> (1) the Court cannot consider material outside the Complaint for purposes of deciding a Rule 12 motion to dismiss; (2) the Declaration contains legal argument and is an attempt to circumvent the page limitations for legal briefs; (3) the Declaration is not based on the personal knowledge of Plaintiff; (4) the Declaration contains inadmissible hearsay testimony; (5) the Declaration is vague and conclusory; (6) the Declaration is not a sworn affidavit or a proper declaration under 28 U.S.C. § 1746; and (7) the Declaration is redundant, irrelevant, impertinent, and scandalous.

(Dkt. No. 40 at 1). Plaintiff opposes the Motion to Strike on several grounds. (Dkt. No. 44).

The instant Motion to Strike relates to Defendants' argument to dismiss Plaintiff's Complaint under the public disclosure bar of the FCA, 31 U.S.C. § 3730(e)(4), the merits of which the Court did not address. (Dkt. No. 29 at 11-13; Dkt. No. 31 at 5).[33] In their Motions to Dismiss,

---

[31] To the extent that Defendants argue that the facts alleged in the Complaint do not state a claim under the FCA, a motion to strike is not the appropriate mechanism for challenging those facts. *See* FED. R. CIV. P. 12(b)(6) (providing for the defense of "failure to state a claim upon which relief can be granted").

[32] Local Rule of Civil Procedure 7.1(d) provides, in relevant part that "no document filed with the Court shall exceed twenty (20) pages without leave of Court." LRCi 7.1(d).

[33] As discussed above, the Court did not address Defendants' alternative arguments for dismissal, instead finding that the Court lacks subject matter jurisdiction over Plaintiff's FCA claims. *See* note 30, *supra*.

Defendants argue that the Complaint is "nothing more than a mosaic of conclusory allegations, half-truths and innuendo collected from a variety of publicly available sources, including federal civil and administrative hearings, federal reports and audits, and the news media." (Dkt. No. 29 at 13 (footnote omitted)). Defendants further argue that Plaintiff, who has "no connection to Southland or the Lottery," "is not an 'original source' of any of the Complaint's factual allegations." (*Id.*).

In his Opposition to Defendants' Motions to Dismiss, Plaintiff contends that he was the "first" to discover and allege that:

> (1) the defendants were defrauding the government by operating illegal video casino games, (2) the defendants were defrauding the government by operating a video lottery which violates the Federal Lottery Law, and (3) the defendants were defrauding the government by concealing their violations of multiple federal laws which could result in significant fines and forfeitures.

(Dkt. No. 37 at 22-23). Plaintiff also refers the Court to the "sworn" Declaration at issue here, which he states "presents the details of his investigation, and establishes that the allegations underlying the FCA claims in the Complaint had not been previously disclosed." (*Id.* at 23).

To the extent that Defendants argue that Plaintiff's Declaration is "redundant, irrelevant, impertinent, and scandalous," the Court finds that Defendants have not met their burden of showing that striking Plaintiff's Declaration is warranted. Further, because the Court will grant Defendants' Motions to Dismiss on subject matter jurisdictional grounds, and therefore will not address Defendants' public disclosure bar argument, Defendants' remaining arguments are moot.

## V.   CONCLUSION

For the foregoing reasons, Defendants' "Motions to Dismiss and Strike" (Dkt. Nos. 28, 30), will be granted as they relate to subject matter jurisdiction (Federal Rule of Civil Procedure 12(b)(1)), and denied as they relate to striking the Complaint (Federal Rule of Civil Procedure

12(f)). In addition, Defendants' "Motion to Strike Plaintiff's Declaration" (Dkt. No. 40) will be denied, including for mootness, and Defendants' "Joint Motion for Hearing" (Dkt. No. 43) will be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date: March 31, 2016                              _____/s/_____
                                                 WILMA A. LEWIS
                                                 Chief Judge